**JUDGE BRIEANT**

**08 CV 5149**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| WARNER BROS. RECORDS INC, a Delaware corporation; CAPITOL RECORDS, LLC, a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; MAVERICK RECORDING COMPANY, a California joint venture; and ARISTA RECORDS LLC, a Delaware limited liability company, | x : : : : Civil Action No.: : : : : |
| Plaintiffs, | : |
| -against- | : |
| DOES 1-4, | : |
| Defendants. | : : : x |

---

## PLAINTIFFS' MOTION FOR LEAVE TO TAKE EXPEDITED DISCOVERY

Plaintiffs move under Rule 26(d) for an order granting Plaintiffs leave to take immediate, limited discovery to determine the identities of Doe Defendants who are being sued for direct copyright infringement. The grounds for this Motion are set forth below and in the Declarations of Carlos Linares and Laurie J. Rust, which are being filed contemporaneously herewith. A proposed Order authorizing limited expedited discovery is also attached hereto.

### I.   INTRODUCTION

Plaintiffs, record companies who own the copyrights in the most popular sound recordings in the United States, seek leave of Court to take limited, immediate discovery to determine the true identities of Doe Defendants, who are being sued for direct copyright infringement. Specifically, Plaintiffs seek depositions of witnesses believed to have information

regarding the infringement alleged in Plaintiffs' Complaint, including information regarding who is responsible for such infringement. Plaintiffs also seek a forensic examination of the computer allegedly used to infringe Plaintiffs' copyrights. Plaintiffs seek such discovery in order to identify the individual or individuals responsible for the infringement of their copyrights so that Plaintiffs can pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement. Plaintiffs are serving a copy of this Motion (with supporting declarations and exhibits) on counsel for the individual who owns the computer at issue in this case and whom is believed to have information concerning the identify of the direct infringer or infringers.

## II.    BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted works. By downloading P2P software, and logging onto a P2P network, an individual can upload (distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other Internet user worldwide. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), *aff'd sub nom.*, *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until enjoined, Napster was the most notorious online media distribution system. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). One of the current online media distribution systems, KaZaA, was used in this case.

Despite the continued availability of such systems, there is no dispute that the uploading and downloading of copyrighted works without authorization is copyright infringement. *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005) ("[P]eople who post or download music files are primary infringers."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("[M]aking . . . a digital copy of [copyrighted] music . . . infringes copyright."); *Napster*, 239

F.3d at 1014 (making copyrighted works available for electronic distribution on a P2P network violates the exclusive right of distribution, even absent evidence of actual distribution); *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster Ltd.,* 125 S. Ct. 2764 (2005); 2 M. & D. Nimmer, NIMMER ON COPYRIGHT ("NIMMER") § 8.08[A][1], at 8-115 ("[The] input of a work into a computer results in the making of a copy, and hence . . . such unauthorized input infringes the copyright owner's reproduction right."). Nonetheless, at any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material. (Linares Decl. ¶ 6, Exhibit A.) More than 2.6 billion infringing music files are downloaded monthly. L. Grossman, *It's All Free,* TIME, May 5, 2003, at 60-69.

The scope of online piracy of copyrighted works cannot be underestimated. Plaintiffs lose significant revenue on an annual basis due to the millions of unauthorized downloads and uploads of well-known recordings that are made available on the Internet by infringers. (Linares Decl. ¶ 9, Exhibit A.) Evidence shows that the main reason for the lost revenue is that individuals are downloading music illegally for free, rather than buying it. *See In re Aimster Copyright Litig.*, 334 F.3d at 645.

On June 13, 2005, Plaintiffs' third-party investigators located an individual using the KaZaA file sharing program under the username "omc@KaZaA" to engage in copyright infringement on a massive scale. (Linares Decl. ¶ 13, Exhibit A). Plaintiffs' investigators detected the infringement by logging onto the peer-to-peer ("P2P") network, in the same fashion as any Internet user, and viewing the files that were being distributed to other users. (*Id.*) Plaintiffs' investigators found 349 music files being distributed, for free, from the computer's "shared" folder to the millions of people who use similar P2P networks. (*Id.*) On information

3

and belief, many of these 349 music files were downloaded to the computer's shared folder without the permission of the record company copyright owners.

Plaintiffs' investigators further ascertained that the sound recordings were being distributed from Internet Protocol ("IP") address 68.160.209.185. (*Id.*) To determine who used this IP address, Plaintiffs filed a "Doe" complaint and, after obtaining a court order, issued a Rule 45 subpoena to Verizon Internet Services, Inc. ("Verizon"). (Rust Decl. ¶ 2). In response to Plaintiffs' subpoena, Verizon identified Joan Cassin as the person to whom the above IP address was registered at the time of infringement. (*Id.*) On September 18, 2007, after having tried unsuccessfully to resolve the matter with Ms. Cassin, Plaintiffs filed a complaint against Ms. Cassin for copyright infringement, *Warner Bros. Records Inc., et al. v. Cassin*, Case No. 06-CV-3089 (SCR)(GAY) (the "*Cassin*" case). (*Id.*) On July 10, 2007, Ms. Cassin filed a motion to dismiss the complaint for failure to state a claim. It was not until May 27, 2008 that Ms. Cassin's counsel in the *Cassin* case first made clear Ms. Cassin's claim that she did not commit the copyright infringement that occurred through her Internet account. (*Id.* ¶ 3) Neither Ms. Cassin, nor her attorney, however, revealed who might be responsible for the infringing activity alleged in Plaintiffs' Complaint. (*Id.*) In light of Ms. Cassin's denial of liability and failure to reveal who might be responsible for the infringement, Plaintiffs moved for a voluntary dismissal of the *Cassin* case and pursued the copyright infringement through the current *Doe* action. (*Id.*)

Plaintiffs in this case allege that the Doe Defendants, without authorization, used an online media distribution system (*e.g.*, a P2P system) to download and distribute Plaintiffs' copyrighted works in violation of the Copyright Act. (Compl. ¶ 16.) Although Plaintiffs do not at this time know the specific identities of the Doe Defendants, Plaintiffs have reason to believe, based on their own investigation, that information regarding the infringement in Plaintiffs'

4

Complaint likely resides on Ms. Cassin's computer, and that Ms. Cassin likely has information concerning who may be responsible for such infringement. Through Plaintiffs' continued investigation, Plaintiffs have identified Ms. Cassin's daughter as Olivia M. Cassin. As Olivia Cassin's initials - OMC- are a match to the KaZaA username, "omc@KaZaA," Plaintiffs believe that Olivia Cassin likely has information concerning the person responsible for the copyright infringement at issue.

Plaintiffs now seek leave of Court to take limited, expedited discovery to determine the identify of the direct infringers in this case. Specifically, Plaintiffs intend to serve a Rule 45 subpoena on Ms. Cassin for a forensic examination of computers in her house on June 13, 2005 and to take her deposition in order to obtain information sufficient to identify those individuals responsible for the infringement of Plaintiffs' copyrights in this case. Plaintiffs also intend to serve Rule 45 subpoenas on other members of Ms. Cassin's household and/or whoever else may be identified by Ms. Cassin as potentially responsible for this infringement, including Olivia M. Cassin. Once Plaintiffs have identified the individuals responsible for the infringement of their copyrights, they will attempt to resolve the dispute with those individuals. If the dispute is not resolved, and it is determined that it would be more appropriate to litigate the copyright infringement claims, Plaintiffs will amend their Complaint to name the particular Defendants to this lawsuit.

### III.    ARGUMENT

Courts routinely allow discovery to identify "Doe" defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal identity of defendant); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th

Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where identity of John Doe could have been determined through discovery); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because defendant was unnamed; "Rather than dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity"); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery"); *United Parcel Serv. of Am., Inc. v. John Does One Through Ten*, No. Civ. A. 1-03-CV-1639, 2003 WL 21715365, at *1 (N.D. Ga. June 13, 2003) (authorizing expedited discovery to determine the identity of defendants); *see also Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389 n. 2 (1971) (noting, without discussion, the use of unnamed defendants).

Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record companies, against Doe defendants for infringing copyrights over P2P networks, many courts, including this Court, have granted Plaintiffs' motions for leave to take expedited discovery. *See, e.g.*, Order, *Capitol Records, Inc. v. Does 1-250*, No. 04 CV 472 (LAK) (S.D.N.Y. Jan. 26, 2004); Order, *Sony BMG Music Ent't v. Does 1-2*, Civil Action No. 5:04-cv-1253 (NAM/GHL) (N.D.N.Y. Nov. 5, 2004); Order, *Virgin Records Am., Inc. v. Does 1-3*, Civil Action No. 3-04-cv-701 (JCH) (D. Conn. April 29, 2004) (true and correct copies of these Orders are attached hereto as Exhibit B). This Court should not depart from its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this issue directly.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes "good cause" for such discovery. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *Entertainment Tech. Corp. v. Walt Disney Imagineering*, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. October 2, 2003) (applying a reasonableness standard; finding that, absent extraordinary circumstances, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances") (quotations omitted); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. *See Semitool*, 208 F.R.D. at 276; *Qwest Comm.*, 213 F.R.D. at 419 ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition."); *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising since such claims necessarily involve irreparable harm to the plaintiff. 4 NIMMER § 14.06[A], at 14-103; *see also Health Ins. Ass'n of Am. v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); *see also ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996); *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1034, 1042 (8th Cir. 2003).

Second, good cause exists here because there is a very real danger that evidence of infringement on Ms. Cassin's computer will not be preserved. Computer-based data are

constantly revised, edited, and even deleted. *See Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 111-12 (D. Colo. 1996) (discussing the nature of computer-based evidence). The deletion process does not completely destroy data but only targets the deleted data's file space on the hard drive for future reuse by other data. If the space allotted to a "deleted" file is later reused, or "overwritten" by a new document or by executing a computer function, the original data is erased and become irretrievable. *Id.* In this case, if information of infringement is erased from Ms. Cassin's computer hard drive through the ordinary use of the computer, Plaintiffs' ability to identify more specifically the Defendants and obtain evidence of their infringement will be significantly diminished. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. *See Qwest Comm.*, 213 F.R.D. at 419; *Pod-Ners, LLC v. Northern Feed & Bean*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing Plaintiff expedited discovery to inspect "beans" in defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, good cause exists because the proposed discovery is narrowly tailored to focus only on those individuals known to have information concerning the infringement at issue and on the computer that was used to infringe Plaintiffs' copyrights. The discovery does not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. *See Semitool*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify the Defendants, and cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known Defendants with whom to confer (and thus, no conference is possible).

There is no prejudice to Defendants because Plaintiffs merely seek information to identify the

Defendants and to serve them, and Plaintiffs agree to use the information disclosed pursuant to

their subpoenas only for the purpose of protecting their rights under the copyright laws.

Fourth, courts regularly grant expedited discovery where such discovery will

"substantially contribute to moving th[e] case forward." *Semitool*, 208 F.R.D. at 277. Here,

Plaintiffs' proposed discovery will substantially contribute to moving this case forward because

it will allow Plaintiffs to allege specifically who is responsible for the infringement of Plaintiffs'

sound recordings identified on Exhibit A to the Complaint. As demonstrated above, Plaintiffs

already have developed a substantial case on the merits against Doe Defendants. Plaintiffs'

Complaint alleges a prima facie claim for direct copyright infringement. Plaintiffs have alleged

that they own and have registered the copyrights in the works at issue, and that Defendants

copied or distributed those copyrighted works without Plaintiffs' authorization. (*See*

Compl. ¶¶ 12, 16.) These allegations state a claim of copyright infringement. *See* 4 NIMMER

§ 13.01 ("Reduced to most fundamental terms, there are only two elements necessary to the

plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying

by the defendant."); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

In addition, Plaintiffs have copies of a sample of the sound recordings Defendants illegally

distributed, which include some of the sound recordings listed on Exhibit A. Plaintiffs have

reason to believe that Ms. Cassin and others in her household, including her daughter, Olivia M.

Cassin, have information regarding who specifically is responsible for the infringement of

Plaintiffs' copyrights. These individuals, and the computer itself, are the best source of

information needed to identify who is responsible for the infringement of the sound recordings

listed on Exhibit A to the Complaint. The requested discovery, therefore, will allow Plaintiffs to

identify specific Doe Defendants and then either resolve this matter or proceed with the litigation.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and enter an Order substantially in the form attached hereto.

Dated: New York, New York
      June 4, 2008

                                       Robinson & Cole LLP

                                  By:_____

                                      Brian E. Moran (BM-8573)
                                      David E. Ross  (DR-1513)
                                      Robinson & Cole LLP
                                      885 Third Avenue, Suite 2800
                                      New York, NY 10022-4834
                                      Telephone: (212) 451-2900
                                      Fax: (212) 451-2999

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x
                                                        :

WARNER BROS. RECORDS INC., a Delaware    :
corporation; CAPITOL RECORDS, LLC, a
Delaware corporation; UMG RECORDINGS,    :
INC., a Delaware corporation; SONY BMG
MUSIC ENTERTAINMENT, a Delaware general   :    Civil Action No.:
partnership; MAVERICK RECORDING
COMPANY, a California joint venture; and     :
ARISTA RECORDS LLC, a Delaware limited
liability company,                             :

                Plaintiffs,          :

          -against-             :

DOES 1-4,                               :

              Defendants.       :

                                            :
---------------------------------------------------- x

## DECLARATION OF CARLOS LINARES

      I, Carlos Linares, have personal knowledge of the facts stated below and, under penalty

of perjury, hereby declare:

      1.      I am Vice President, Anti-Piracy Legal Affairs for the Recording Industry

Association of America, Inc. ("RIAA"), where I have been employed for over six years.  My

office is located at 1025 F Street, N.W., 10th Floor, Washington, DC 20004.  I submit this

declaration in support of Plaintiffs' Motion for Leave to Take Expedited Discovery.

      2.      This declaration is based on my personal knowledge, and if called upon to do so, I

would be prepared to testify as to its truth and accuracy.

### The RIAA's Role in Protecting Its Member Recording Industry Companies
### From Copyright Infringement

      3.      The RIAA is a not-for-profit trade association whose member record companies

create, manufacture, and/or distribute the great majority of all legitimate sound recordings

produced and sold in the United States. The RIAA's member record companies comprise the most vibrant national music industry in the world. A critical part of the RIAA's mission is to assist its member companies in protecting their intellectual property in the United States and in fighting against online and other forms of piracy. All of the Plaintiffs in this action are members of the RIAA.

4.    As part of that process, the RIAA on behalf of its members retains a variety of services from outside vendors to assist with its investigation of the unauthorized reproduction and distribution of copyrighted sound recordings online. As Vice President, Anti-Piracy Legal Affairs, I am responsible for evaluating and contributing to online strategies for the RIAA, including oversight of the investigations into online infringement of copyrighted sound recordings.

### The Internet and Music Piracy

5.    The Internet is a vast collection of interconnected computers and computer networks that communicate with each other. It allows hundreds of millions of people around the world to communicate freely and easily and to exchange ideas and information, including academic research, literary works, financial data, music, movies, graphics, and an unending and ever-changing array of other data. Unfortunately, the Internet also has afforded opportunities for the wide-scale piracy of copyrighted sound recordings and musical compositions. Once a sound recording has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in sound quality.

6.    Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems. The most notorious example of such a system was Napster, which was

enjoined by a federal court.  Notwithstanding the court's decision enjoining Napster, similar online media distribution systems emerged and attempted to capitalize on the growing illegal market that Napster fostered.  These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others.  To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy.  At any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material.

       7.      P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to:  (1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  P2P networks enable users who otherwise would have no connection with, or knowledge of, each other to offer to each other for distribution and copying files off of their PCs, to provide a sophisticated search mechanism by which users can locate these files for downloading, and to provide a means of effecting downloads.

       8.      The major record companies generally have not authorized their copyrighted sound recordings to be copied or distributed in unsecured formats by means of P2P networks.  Thus, the vast majority of the content that is copied and distributed on P2P networks is unauthorized by the copyright owner – that is, the distribution violates the copyright laws.

       9.      The scope of online piracy of copyrighted works cannot be underestimated.  The RIAA member companies lose significant revenues on an annual basis due to the millions of unauthorized downloads and uploads of well-known recordings that are made available on the Internet by infringers who, in virtually all cases, have the ability to maintain their anonymity to all but the Internet Service Provider ("ISP") they use to supply them with access to the Internet.

10.     The persons who commit infringements by using the P2P networks are, by and

large, anonymous to Plaintiffs.  A person who logs on to a P2P network is free to use any alias

(or computer name) whatsoever, without revealing his or her true identity to other users.  Thus,

Plaintiffs can observe the infringement occurring on the Internet, but do not know the true names

or mailing addresses of those individuals who are committing the infringement.

### The RIAA's Identification of Copyright Infringers

11.     In order to assist its members in combating copyright piracy, the RIAA, through

outside vendors, conducts searches of the Internet, as well as file-copying services, for infringing

copies of sound recordings whose copyrights are owned by RIAA members.  A search can be as

simple as logging onto a P2P network and examining what files are being offered by others

logged onto the network.  These searches generally result in the identification of specific Internet

Protocol ("IP") addresses from which infringers are making unauthorized copies of sound

recordings available to the public.  An IP address is a unique identifier that, along with the date

and time, specifically identifies a particular computer or server using the Internet.  An IP address

also allows the RIAA to use publicly available databases to ascertain, in general terms, the ISP

that provides the infringer with access to the Internet.

12.     The RIAA engages in a painstaking process to determine whether a person is

infringing.  That process relies on human review of evidence supporting the allegation of

infringement.  For each suspected infringer, the RIAA reviews a listing of the music files that the

user has offered for upload by others from his or her computer in order to determine whether

they appear to be copyrighted sound recordings.  The RIAA also downloads copyrighted sound

recordings from these users, and listens to them in order to confirm that they are, indeed, illegal

copies of sound recordings whose copyrights are owned by RIAA members. The RIAA also

downloads and stores other evidence, such as metadata accompanying each file being

4

disseminated that demonstrates that the user is engaged in copyright infringement.

13.    In the ordinary course of investigating online copyright infringement, on June 13, 2005, the RIAA located an individual using the KaZaA file sharing program to engage in copyright infringement on a massive scale. The RIAA logged onto the P2P network in the same fashion as any Internet user, then detected the infringement by viewing the files that were being distributed to other users. The RIAA found 349 music files being distributed, for free, from the computer's "shared" folder to the millions of people who use similar P2P networks. The RIAA further ascertained that the sound recordings were being distributed from Internet Protocol ("IP") address 68.160.209.185.

14.    The user-defined author and title of the files being distributed suggested that many were copyrighted sound recordings being disseminated without the authorization of the copyright owners. The RIAA downloaded and listened to a representative sample of the music files that were being distributed and was able to confirm that the sampled files were illegal copies of sound recordings whose copyrights are owned by RIAA members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 27, 2008 in Washington, D.C.

_____
Carlos Linares

5

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

CAPITOL RECORDS, INC., a Delaware
corporation; ARISTA RECORDS, INC., a
Delaware corporation; INTERSCOPE
RECORDS, a California general partnership;      :    Civil Action No.: 04 CV 472 (LAK)(HBP)
LOUD RECORDS, LLC, a Delaware corporation;
UMG RECORDINGS, INC., a Delaware
corporation; WARNER BROS. RECORDS INC.,
a Delaware corporation; ATLANTIC
RECORDING CORPORATION, a Delaware
corporation; FONOVISA, INC., a California
corporation; SONY MUSIC ENTERTAINMENT
INC., a Delaware corporation; BMG MUSIC, a
New York general partnership; LONDON-SIRE
RECORDS INC., a Delaware corporation;
MOTOWN RECORD COMPANY, L.P., a
California limited partnership; PRIORITY
RECORDS LLC, a California limited liability
company; MAVERICK RECORDING
COMPANY, a California joint venture;
ELEKTRA ENTERTAINMENT GROUP INC., a
Delaware corporation; and VIRGIN RECORDS
AMERICA, INC., a California corporation,

                            Plaintiffs,

                    -against-

DOES 1 - 250,

                            Defendants.

-------------------------------------------------------- x

## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY

Upon the *ex parte* application of Plaintiffs to take immediate discovery, the annexed

declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of J.

Christopher Jensen, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Time Warner Cable to

obtain the identity each Doe Defendant by requesting the name, address, telephone number, e-

mail address, and Media Access Control addresses for each Defendant. ~~The disclosure of this~~

~~information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).~~

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response

to the discovery requests may be used by Plaintiffs solely for the purpose of protecting Plaintiffs'

rights under the Copyright Act.

Dated: __1/26/04__          _____

                             United States District Judge

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership; ARISTA
RECORDS LLC, a Delaware limited liability
company; BMG MUSIC, a New York general
partnership; UMG RECORDINGS, INC., a
Delaware corporation; and VIRGIN RECORDS
AMERICA, INC., a California corporation,

Plaintiffs,

-against-

DOES 1-2,

Defendants.

[PROPOSED] ORDER GRANTING
PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

Civil Action No.: 5·04-CV-1253
(NAM|GHL)

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
NOV - 5 2004
AT_____O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

        Upon Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

the annexed Declaration of Steven E. Cole, Esq., the annexed Declaration of Jonathan Whitehead

and the exhibit thereto, and the accompanying Memorandum of Law, it is hereby:

        ORDERED that Plaintiffs may serve immediate discovery on Morrisville State

College, State University of New York to obtain the identity of each Doe Defendant by serving a

Rule 45 subpoena that seeks information sufficient to identify each Doe Defendant, including the

name, address, telephone number, e-mail address, and Media Access Control addresses for each

Defendant.

        IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

Plaintiffs' rights under the Copyright Act.

Dated: November 5, 2004

_____
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VIRGIN RECORDS AMERICA, INC. :
ET AL                          :
    Plaintiffs             :    CIVIL ACTION NO.
                           :    3-04-cv-701 (JCH)
v.                             :
                           :
DOES 1 - 3                     :    APRIL 29, 2004
    Defendants             :

### ORDER GRANTING PLAINTIFFS'
### MOTION FOR EXPEDITED DISCOVERY [DKT. NO. 5-1]

Upon the Motion of plaintiffs for Expedited Discovery, the supporting

Memorandum of Law, and the declaration of Jonathan Whitehead and the exhibit thereto,

the court finds there is good cause for expedited discovery, in particular, to preserve

evidence and to identify the defendants for service.

It is therefore ORDERED that:

1.    Plaintiffs may serve immediate discovery on Patriot Media &

Communications ("Patriot") to obtain the identity of Doe defendants 1, 2 and 3 by serving

a Rule 45 subpoena that seeks information sufficient to identify each Doe defendant,

including the name, address, telephone number, e-mail address, and Media Access Control

address for each defendant.

2.    If and when Patriot is served with a subpoena, within five business days

thereof, it shall give notice (notice via email is sufficient) of the subpoena to the subscribers

in question.  If Patriot and/or any defendant wishes to move to quash the subpoena, the

party must do so before the return date of the subpoena, which will be 15 business days from the date of service.

     3.    If and when Patriot is served with a subpoena, Patriot shall immediately preserve the subpoenaed information in question pending resolution of any timely-filed motion to quash; and

     4.    Counsel for plaintiffs shall provide a copy of this Order to Patriot along with the subpoena.

     5.    The disclosure of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B), which authorizes cable operators to disclose personally identifiable information when the cable operators are ordered to do so by a court.

     IT IS FURTHER ORDERED THAT any information disclosed to plaintiffs in response to the Rule 45 subpoena shall be used by plaintiff solely for the purpose of protecting plaintiffs' rights under the Copyright Act.

**SO ORDERED.**

     Dated at Bridgeport, Connecticut this 29th day of April, 2004.

                     /s/ Janet C. Hall
                     Janet C. Hall
                     United States District Judge

**JUDGE BRIEANT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

WARNER BROS. RECORDS INC, a Delaware
corporation; CAPITOL RECORDS, LLC, a
Delaware corporation; UMG RECORDINGS,
INC., a Delaware corporation; SONY BMG
MUSIC ENTERTAINMENT, a Delaware general
partnership; MAVERICK RECORDING
COMPANY, a California joint venture; and
ARISTA RECORDS LLC, a Delaware limited
liability company,

            Plaintiffs,

      -against-

DOES 1-4,

          Defendants.

    Civil Action No.:

------------------------------------------------------- x

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE
## TO TAKE EXPEDITED DISCOVERY

This matter is before the Court on Plaintiffs' Motion for Leave to Take Expedited

Discovery.  Having considered the motion, and being sufficiently advised, the Court hereby

FINDS good cause for the relief requested.  Therefore,

IT IS HEREBY ORDERED that Plaintiffs may serve immediate discovery on Joan

Cassin and Olivia M. Cassin in the form of a Rule 45 subpoena for deposition testimony and a

computer forensic examination in order to obtain the identity of each Doe Defendant.

IT IS FURTHER ORDERED THAT Plaintiffs may serve immediate discovery in the

form of a Rule 45 subpoena for deposition testimony on individuals identified by Joan Cassin

and / or Olivia M. Cassin, who used Joan Cassin's computer between May 2005 and June 2006.

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the Rule 45 subpoenas may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated:_____       _____

United States District Judge